NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| WASHINGTON ABANTO, et al., | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiffs, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 11-CV-05519 (DMC)(JAD) |
| | : | |
| BANK OF AMERICA, N.A., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.

     This matter comes before the Court upon motion by Defendant Bank of America, N.A.

("Plaintiff" or "Bank of America") to dismiss Plaintiffs' Complaint, pursuant to FED. R. CIV. P.

12(b)(6).  Pursuant to FED. R. CIV. P. 78, no oral argument was heard.  After considering the

submissions of all parties, it is the decision of this Court for the reasons herein expressed that

Defendant's motion to dismiss is **granted**.[1]

---

    [1]The Court notes that the instant motion is one of many before this Court in twenty-five
related matters filed between September 22 and 23, 2011 following the dismissal of Almazan, et
al v. 1st 2nd Mortg. Co. Of N.J., Inc., et al., No. 10-1336, 2011 WL 2652149 (D.N.J. June 30,
2011).  After reviewing the complaints in each of the related matters, it appears that all of the
complaints are substantively the same in several material regards and appear to be variations on
the same formulaic complaint.  As a result, the complaints all suffer from the same deficiencies,
namely a failure to plead a plausible claim to relief.  Accordingly, the Court will simultaneously
decide the twelve motions presently before it and dismiss the complaints in the following cases:
Lelina v. 1 st 2nd Mortgage Co. of NJ, Inc. (11-5517); Abanto v. Bank of America, N.A. (11-
5519); Estacio v. Deutsche Bank Nat'l Trust Co. (11-5522); Abucay v. GMAC Mortgage Corp.
(11-5523); Salazar v. Nat'l City Bank (11-5528); Isip v. Nationstar Mortgage, LLC (11-5529);
Coolack v. Select Portfolio Servicing, Inc. (11-5531); Magat v. US Bank Nat'l Assoc. (11-5534);

I.     **BACKGROUND**[2]

This case arises out of the alleged predatory lending practices perpetrated by Defendants during mortgage transactions entered into with Plaintiffs on their subject properties. Pls.' Compl. ¶ 2.  Plaintiffs allege numerous Federal and State law claims, including but not limited to the Federal Truth in Lending Act and Regulation Z, the Federal Real Estate Settlement Procedures Act, the Home Ownership and Equity Protection Act, the Federal Racketeer Influenced and Corrupt Organizations Act, the Fair Debt Collection Practices Act, the Fair Credit Report Act, State and Federal High Cost Loan Statutes, the New Jersey Consumer Fraud Act, the New Jersey Lenders' Liability Law, the New Jersey RICO statutes, breach of contract, fraud and misrepresentation, negligence, among others. Pls.' Compl. ¶ 2.

The Complaint in the instant matter was filed following the dismissal of the class action suit in Almazan, et al v. 1st 2nd Mortg. Co. Of N.J., Inc., et al., No. 10-1336, 2011 WL 2652149 (D.N.J. June 30, 2011)(Civ.A.No. 10-1336, ECF No. 191).   The complaint in Almazan was dismissed without prejudice on the grounds that Plaintiffs failed to adequately put any Defendants on notice of any specific claims. (Civ.A.No. 10-1336, Opinion adopting Report and Recommendation June 2, 2011, at p. 7, ECF No. 185).  Specifically, the Court noted that Plaintiffs' Complaint "[did] not

---

Flores v. Wells Fargo, N.A. (11-5535); Cerciello v. First Franklin Loan Services (11-5536); Auletta-Segura v. Green Tree Servicing, LLC (11-5538); and Abucay v. HomeEq Servicing (11-5539).  This Court also notes that three related cases have already been dismissed by this Court on the same grounds. See Gutierrez v. TD Bank, No. 11-5533, 2012 U.S. Dist. LEXIS 10724 (D.N.J. Jan. 27, 2012)(JLL); Aquino v. Aurora Loan Services, LLC, No. 11-5518, 2012 WL 2514844 (D.N.J. June 28, 2012)(DMC); and Flores, et al. v. HSBC, et al, No. 11-5525, 2012 WL 2522987 (D.N.J. June 29, 2012)(DMC).

[2] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

inform any reader what the Defendants did wrong, to whom they did it, or when they did it." Id. Plaintiffs were directed to re-file separate complaints against only those Defendants that were involved in their respective loans. Further, Plaintiffs were admonished, under the principles of Younger Abstention, to consider the existence of any pending state foreclosure or federal bankruptcy proceedings in determining whether to file a federal law suit. Id. at 9.   Finally, the Court found Defendants' arguments regarding Plaintiffs' counsel's failure to comply with the Local Civil Rule 11.2, which directs a party to disclose whether the matter in controversy is the subject of any other action pending in any court, were well founded. Id.  The Court warned that "[a] second round of non-compliance with that Rule will result in sanctions upon the filing of the appropriate motions." Id.

Defendant Bank of America, N.A. ("Bank of America") is a mortgage loan originator in the United States and is named in the Complaint as a parent company of its acquired lenders or subsidiaries residential mortgage-lending operations, as well as on the belief that Bank of America directed, participated in and/or influenced the setting and establishing of credit-relating policies and underwriting guidelines and practices used by each of the other Defendants. Pls.' Compl. ¶¶ 44-45. Plaintiffs' Complaint provides C&S of South Carolina, American Commercial Bank, North Carolina National Bank, Mellon National, BankAmerica Corp., Bank of Boston Corp., Bank of New England Corp., Citizens & Southern National Bank, Sovran Financial Corp., Security Pacific Corp.,  First Republic Bank Corp., Fleet/Norstar Financing Group, Inc., Bank of New York, Shawmut National Corp., Boatman's Bancshares, Nationbank Corp., Barnett Banks, Inc., Bank of America Private Wealth Management, Bank of New York Mellon, Bank of America Corp., Bank of America Card Services, FleetBoston Financial Corp., Standard Federal Bank, N.A., Fleet Financial Group, Inc., Countrywide Home Loans, and John Doe 1-10 as the alleged subsidiaries or acquired lenders of

Bank of America. Pls.' Compl. ¶ 46.  Plaintiffs allege that the Defendants collectively established policies for retail and wholesale access to their loan products and that each Defendant directed, participated in and/or influenced the setting and establishing of credit-related policies, procedures, practices and underwriting guidelines used by each of the other Defendants. Pls.' Compl. ¶¶ 47-48.

The Complaint provides facts specific to each Plaintiffs' respective mortgage.[3]  Such allegations consist of a variation on the following combination of specific details and general conclusions regarding the loans acquired:

Sharon and Philip Avella[4]

129. The Borrower secured a 1st and 2nd Mortgage from Bank of America for refinancing the prior mortgages used to purchase the referenced home.  The home was purchased on 12/20/2005 for $575,000 and refinanced on 2/23/2007.  The total refinance amount was $539,500.  The Wall Street Financial Corp was also a lender to these transactions together with their successors & assigns.  The Mortgagees would later declare the mortgage in default.

130. First Mortgage: The loan was a 30 year term and characterized as an Interest Only Fixed Rate Note.  The loan would be paid interest only for 10 years monthly at $2,600 and increase to $3,600 per month for the ensuing 20 year period.  The second phase payments would be principal & interest.  Any outstanding balance would be due as a lump payment on the 360 month anniversary.  These loans can likely generate a negative amortization, flagging a "high risk" loan designation.  The interest rate was 6.5%.

--------

[3]As noted in Gutierrez, the Complaint in this action, as well as in each related action, essentially constitutes a re-filing of the original complaint from Almazan. 2012 WL 272807, at *1. Judge Linares noted that the new complaints "siphoned off the individual lender Defendants named in the Original and Amended Complaints into separate actions" and refiled the complaint "slightly modified and tailored to each individual lender with a short section of around ten numbered paragraphs detailing the facts of the specific named Plaintiffs with whom each Defendant had made mortgage loans." Id.  As a result of this apparent re-filing, the counts alleged in each complaint are identical, down to their numeric order.  As noted by Judge Linares, the only apparent difference among the Complaints are the addition of facts particular to each named Plaintiff.

[4]The following excerpt is taken directly from Plaintiffs' Complaint to illustrate the nature of the specific allegations provided for each Plaintiffs, to the extent they are included.

4

131. A 2nd mortgage was noted in an amount of $59,500 for 30 years at an annual interest rate of 7.937%.

132. The Client was not provided completed and/or signed FNMAE form 1003 Mortgage Applications; no Amortization schedules, or Verification Statements for Employment and either a pro forma or a Financial Statement were provided to the client. No signed HUD-1 or Reg.Z was provided. ***Federal Disclosure Statement was not provided. Relevant & vital documents were unsigned. The source of the original application was not provided. The loans were completed with marginal employment/income verifications.***

133. The review of the client's financial situation revealed insufficient reliable income and liquidity as well as extended liabilities so as to make the aforementioned loans in excess of the Borrower's ability to repay. The unsigned mortgage application was considered "Stated Income" which is derisively referred to as a "Liar Loan" for obvious reasons. The total liquidity of the Borrower on the application was $25,448, which amount is unlikely to support loans in excess of $500,000. The adjusted gross income of the Borrower was also not supportive of those loan balances. The neatly typed final application was unsigned.

134. Transactional Fees: fees were charged either directly to the Borrower (application, brokerage) or hidden (POC) which were de facto YSP entries. Money fundability being what it is, these profligate charges thwarted the Borrower from a banking transaction that demonstrated more reasonable and greater loan repayment possibility.

135. **Substantive Unconscionability: The UCCC considers entering into a transaction with the knowledge that the consumer could not receive a "substantial benefit" from it or if there was no reasonable probability of payment in full as demonstrable of "Substantive Unconscionability".**

136. The loan rates appeared to be of sub-prime nature since they clearly exceeded the rate borne by more "A" prime worthy customers. It was a "High Risk Loan" as referenced in NJPL 2009, c84 and NJPL 2008 c127. Signed documentation including TIL, with annual percentage rate, finance charge, amount financed and total of payments were not disclosed in a clear & conspicuous manner as to reflect the legal obligations of the parties. Neither were there disclosures segregated from other information in a consumer-keep able format. None of those available documents were signed and/or provided.

137. Absent proper customer notification cited above, and with no proper HOEPA notice, written in conspicuous type size forthcoming, the Lender (s) seem seriously deficient in disclosures.

138. The Lenders's should have been more aware of the shifting economic winds and have insisted on greater applicant equity and subsequently followed a more conservative lending policy to offset that pending value decline. The Township of Wayne, the Taxing District,

5

valued the home (True Value) at $432,600+- for the transactional duration imputing an LTV ration of 125%.  This ration creates a high risk loan and the transaction is absent any PMI documentations.  ***The underlying URAR Appraisal is therefore further suspect for supporting a Banking Transaction based on overvaluation.***

139.  The loan amount was excessive and fraught with potential abuse.  Defendants made numerous material representations to Borrowers including loan affordability but understated the deleterious effects of variable rate interest calculation.

140.  **Predatory Lending: The pattern of irregularities, unrealistic asset-based reliance, flagrant lack of disclosures, and under-emphasis on liquidity contributed to *predatory lending*.  These deceptive practices, fraudulent acts and omissions seemed poised to disregard and misrepresent the best interests of the Borrowers.  High LTV loans set a stage for unrealistic expectations of payment in the future.  Predatory patterns were replete in this high-risk transaction.  The dynamic of these Loan Approvals guaranteed their failures.**[5]

As demonstrated above, the only allegation specific to any named Defendant is that Bank of America provided Plaintiff with the mortgages in question.  No further allegations detailing any specific acts committed by Defendants is provided.  The remaining Plaintiffs at most provide a variation of comparable facts and similarly do little more than allege some level of participation by Defendants and other lenders in their mortgage transactions without further detail.  The Court will address each Plaintiff's specific allegations in turn.

Washington Abanto ("Abanto") is alleged to have executed a note and two mortgages to Greenpoint Mortgage Funding. The loan thereafter went into default.  The lenders and/or assignees are alleged to include Greenpoint Mortgage Funding, Washington Mutual Home Loans, Bank of America Home Loans Servicing and Bank of America, N.A.  Only Bank of America N.A. is a named

---

[5]As will be discussed in greater detail below, these allegations closely mirror those highlighted as factually deficient in the dismissal of the <u>Gutierrez</u> action.  There, Judge Linares found such allegations to "mimic the generality and legally conclusory statements made in the rest of Plaintiffs' Complaint." 2012 WL 272807, at *4.

Defendant to this action.[6] The remainder of the allegations regarding the Abanto mortgage refers to the "lenders" generally and do not detail any acts on the part of Bank of America.

Mark C. Balagtas ("Balagtas") alleges that he executed a first mortgage note and mortgage to the Citizens Mortgage Corporation on January 4, 2007, and subsequently executed an assignment of the mortgage to Homecomings Financial, LLC f/k/a Home Coming Financial Network, Inc.[7] ("Homecomings Financial"), which was recorded on May 3, 2007.  On January 24, 2007, Homecomings Financial executed an assignment of mortgage to Mortgage Electronic Systems, Inc., which was also recorded on May 3, 2007.  On February 22, 2010, Mortgage Electronic Systems, Inc. is alleged to have executed an assignment of the mortgage to Deutsche Bank Trust Company of Americas.  A second mortgage note and mortgage to Citizens Mortgage Corporation was assigned to Homecomings Financial.  The mortgage thereafter went into default.  Balagtas alleges that he was never informed that the mortgage would be sold to Homecomings Financial.  Finally, Balagtas alleges that Citizens Mortgage Corporation made numerous material representations to him and clearly mislead, cheated, lied, and violated in trust in order to reap the benefit of a large amount of revenue.  None of the parties allegedly involved in Balagtag's mortgage are named as Defendants to this action.

Alfonso and Winifreda Bautista (the "Bautistas") are alleged to have secured a first mortgage from First Financial Equities, Inc..  The Bautistas appear to allege that the mortgage was assigned

---

[6]Although Plaintiffs appear to name several "Bank of America" entities which are not specifically listed as Defendants, this Court will construe Plaintiffs' allegations against any "Bank of America" entity to refer to the named entities.

[7]Plaintiff refers to "Homecoming Financial, LLC f/k/a Home Coming Financial Network, Inc." as well as "Homecomings Financial, LLC f/k/a Homecomings Financial Network, Inc."  It is unclear from the pleadings whether Plaintiff refers to distinct entities.

to BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing, L.P. The Bautista's mortgage later proceeded into default. A second mortgage was secured to TD Bank n/k/a [sic] Commerce Bank. The Bautistas do not allege any facts specific to a single named Defendant.

April and Yang Blanco (the "Blancos") are alleged to have secured a first mortgage through Mortgage Electronic Registration Systems with GFI Mortgage, Inc., its successors and assigns. The mortgage was subsequently assigned to Chase Home Finance, LLC on December 29, 2009. The mortgage allegedly went into default and a civil action foreclosure complaint was filed January 5, 2010. The lenders and/or assignees allegedly involved in the Blanco mortgage were Mortgage Electronic Registration Systems, GFI Mortgage, Inc., and Chase Home Finance, LLC., as well as their respective successors and assigns. There are no facts alleged with respect to any of the named Defendants to this action.

Carlos J. and Teresita Cancio (the "Cancios") allegedly executed a note to Bank of America on January 31, 2007, and secured this note with their residence in Jersey City, New Jersey. The mortgage allegedly went into default on December 1, 2009 and a civil action foreclosure complaint was filed on March 22, 2010. The lenders and/or assignees allegedly involved in the Cancio mortgage were Countrywide Home Loans, Countrywide Financial, Countrywide FSB Bank, Countrywide Bank NA, BAC Home Loans, Bank of America, NA, Bank of America FSB Bank, as well as their successors and assigns. Countrywide Home Loans and Bank of America, NA are the only named Defendants specifically referenced with respect to the Cancio Plaintiffs. No further factual allegations are provided to detail the conduct of the named entities.

Ramon and Rodora Cartasano (the "Cartasanos") are said to have executed a note and two mortgages to Greenpoint Mortgage Funding, Inc. The loan later went into default. The lenders

and/or assignees involved with the Cartasano loan are alleged to include Westside Mortgage LLC, Greenpoint Mortgage Funding, Washington Mutual Home Loans, Bank of America Home Loans Servicing, and Bank of America, NA.  Bank of America, NA is the only named Defendant specifically addressed with respect to the Cartasanos, yet it remains undisclosed the exact nature of participation that Bank of America is alleged to have contributed.

Michael and Sandra Joyner (the "Joyners") allegedly executed a note and a mortgage to Real Estate Mortgage Network of River Edge, New Jersey.  The loan subsequently went into default.  The lenders and/or assignees alleged to have been involved with the Joyner loan are Mortgage Electronic Registration System, Inc., Real Estate Mortgage Network, Countrywide Home Loans Servicing LP, Bank of America Home Loans, and BAC Home Loan Servicing LP.  Of the parties specifically named, only Bank of America and Countrywide Home Loans are named Defendants to the instant action.  No further specific allegations are provided with respect to the particular conduct of either Bank of America or Countrywide in the Joyner loan.

Maria T Kabigting is alleged to have executed a note and mortgage to Bank of America, N.A. which went into default on or about June 1, 2009.  A second mortgage is referenced in the Complaint as having been executed simultaneously with the first mortgage without further detail.  The lenders and/or assignees allegedly involved in the Kabigting mortgage are Bank of America, NA, Bank of America FSB, BAC Home Loans Servicing, and their successors and assigns.  No further allegations are provided regarding the role played by the named Defendants.

Young J. Lee alleges that he secured a first mortgage from Countrywide Home Loans, Inc. and MERS, Inc. and the Bank of New York Mellon became part of the lending transaction.  A second mortgage was allegedly acquired with the same lender.  The loan is alleged to have regressed

ultimately into default.  No further specific allegations were provided against any of the named Defendants.

Pedro and Miguelina Lopez (the "Lopezes") allegedly executed a note and mortgage on October 26, 2006 to Montgomery Mortgage Capital Corporation.  The loan allegedly went into default and litigation ensued.  The lenders and/or assignees alleged to have been involved in the Lopez loan are Mortgage Electronic Registration Systems, Montgomery Mortgage Capital Corporation, HSBC Bank USA, NA, Deutsche ALT-A Securities Mortgage Loan Trust, Series 2007 BARI Mortgage Pass thru Certificates and their successors and assigns.  None of the parties allegedly involved in the Lopez loan are named as Defendants to the instant action.

Gloria Manuel and Alfredo Carreon purchased a home and executed a note and mortgage to Real Estate Mortgage Network.  Plaintiffs' Complaint further indicates a second mortgage by stating "2nd mortgage: HELOC noted."  The lenders and/or assignees alleged to have been involved in the loan include Mortgage Electronic Registration System, Inc., Real Estate Mortgage Network, Countrywide Home Loans Servicing LP, JP Morgan Chase Bank NA c/o Chase Home Finance LLC. Countrywide Home Loans is the only named participant who has been designated as a Defendant in this action.  Plaintiffs do not provide further facts detailing any specific acts committed by Countrywide with respect to the loan.

Mersedita Marasigan executed a note and mortgages on her condo unit to JP Morgan Chase bank, NA of Garden City, NY.  The loan subsequently went into default.  The lenders and/or assignees Plaintiff indicates are involved are JP Morgan Chase Bank, NA and Chase Home Finance, LLC.  Neither of the named participants are Defendants to this action and no further factual allegations have been provided to implicate any of the named Defendants.

Corazon and Joseph Pring (the "Prings") allegedly secured a first mortgage from GFI Mortgage, Inc. Plaintiff appears to allege that the mortgage was thereafter assigned to BAC Loans Servicing, L.P. The loan allegedly proceeded into default and a foreclosure complaint was filed on August 19, 2009. Plaintiffs also note the existence of a second mortgage with Wachovia Bank, National Association. Plaintiffs do not further indicate any specific acts executed by the named Defendants and simply refers to lenders generally. GFI Mortgage, Inc. is not a named Defendant.

Aurea and Francis Reyes (the "Reyes") refinanced their home and executed a note and mortgage to H&R Block Mortgage Corporation. The lenders and/or assignees allegedly involved in the Reyes loan were Mortgage Electronic Registration System (MERS), H&R Block Mortgage Corporation, BAC Home Loans Servicing, LP, and Bank of America Home Loans. Bank of America is the only named Defendant alleged to be involved in the Reyes loan, but no further factual allegations indicate the precise role played.

Rosa and Fermin Reynosa (the "Reynosas") are alleged to have executed two notes and two mortgages to America's Wholesale Lender. The loan later went into default. The lenders and/or assignees allegedly involved in the loan were America's Wholesale Lender, the Bank of New York Mellon f/k/a the Bank of New York, and BAC Home Loans, LP. No further specific factual allegations were provided regarding the individual participants.

Lorna Rosen is alleged to have executed a note and mortgage to the Wall Street Financial on April 20, 2007. An assignment of mortgage was executed by Chad Mosley, Assistant Vice President Mortgage Electronic Systems, Inc. to HSBC Bank USA, National Association, as trustee for the holder of Deutsche Alt-1 Securities Mortgage Loan Trust Series 2007-1 Mortgage Pass Through Certificates. The documents provided to the borrower pursuant to this transaction were

11

allegedly limited and no copies of the mortgage loan applications with disclosures were provided. The Client was never informed that the mortgage would be sold. A second note and mortgage were allegedly executed to Wall Street Financial Corporation on February 26, 2007, which was thereafter assigned to Bank of America, NA. Finally, Plaintiff Rosen alleges that Greenpoint Mortgage Funding, Inc. made numerous material representations to the borrower (Naomi Fabiosa) and that Greenpoint clearly misled, cheated, lied and violated the borrower's trust in order to benefit from a large amount of revenue. Greenpoint is not a named Defendant to this action and it is unclear from Plaintiffs' pleadings what role Greenpoint is alleged to have played in the transaction. The only allegations provided by Plaintiff regarding a named Defendant is that Bank of America, NA was assigned Plaintiff's second mortgage.

Emmer and Aloha Sanchez executed a note and a mortgage on November 20, 2007 to Mortgageit, Inc. of New York City, brokered by Accurate Mortgage Corp. of Bergenfield, NJ. The lenders and/or assignees allegedly involved in the Sanchez loan were Mortgageit, Inc., Accurate Mortgage Corp., Countrywide Home Loans Servicing, LP, BAC Home Loans, LP, and Bank of America Home Loans. While the Sanchezes allege that named Defendants were involved in their loan, Plaintiffs fail to detail the precise role and participation of each Defendant. No further factual allegations are provided concerning any act committed by any of the named Defendants.

Juan C. and Sandra C. Sanchez executed a first and second mortgage on their home. The initial lender was alleged to have been First National Bank of Arizona, located in McLean, Virginia. The lenders and/or assignees allegedly involved in the loans were First National Bank of Arizona, GMAC Mortgage, and Countrywide Home Loans. Only Countrywide is a named Defendant in this action, yet further factual allegations directed at Countrywide are not provided.

Virgilio Sese alleges that he executed a note and mortgage to the Real Estate Mortgage Network in River Edge, New Jersey.  The loan is alleged to have gone into default on November 1, 2008 and litigation ensued.  The lenders and/or assignees involved in Sese's loan were Real Estate Mortgage Network, Countrywide Home Loans, Countrywide Bank FSB, Bank of America, NA, BAC Home Loans et al, and their successors and assigns.  No further specification is provided regarding the precise nature or time of participation of any of the named lenders or assignees. Plaintiff rather refers generally to "lenders" in the remainder of the allegations concerning his loan.

Luis A. Suazo secured a mortgage on his home.  Countrywide Home Loans together with "others" and their successors and assigns are alleged to have placed the loans.  Further allegations regarding the specific acts of Countrywide are not provided.

Richard Taylor and Melissa Batchu executed a note and mortgage to Peoples Choice Home Loan, Inc. which subsequently went into default and litigation ensued.  The lenders and/or assignees are alleged to include American Mortgage Source, Peoples Choice Home Loans, and Carrington Mortgage Services, Inc. and their successors and assigns.  None of the alleged participants are Defendants named in this action.

Shirley E. Thenstead allegedly executed a note and mortgage to "the Countrywide Home Loans Mortgage network."  The loan went into default and litigation ensued.  Plaintiff alleges that the following lenders and/or assignees participated in the referenced loan: Countrywide Home Loans, Countrywide Bank FSB, Bank of America, NA, BAC Home Loans et al, and their successors and assigns.  Plaintiff does not provide any further factual allegations regarding each of the named participants.

Marino Torres refinanced his home with a first mortgage loan from Countrywide Home

Loans together with others, namely CMS, Bank of America, Arck Holdings, together with their successors and assigns.  The mortgagees would later declare the mortgage in default on August 1, 2007. No further factual allegations are provided regarding the participation of the named entities.

Walter E. and Nora E. Vega refinanced their home and received a first mortgage from Wall Street Financial Corp.  Other lenders and/or servicers allegedly involved in the mortgage were MERS, Inc., Countrywide Home Loans, Bank of America and BAC Loans Servicing together with their successors and assigns.  The mortgage allegedly proceeded into default and the mortgagors proceeded into a successful Chapter 7 bankruptcy.  A second mortgage extended through Bank of America was also noted by Plaintiffs.  No further facts are provided regarding the specific acts of the named entities.

Marilou Lelina refinanced her home and secured a first mortgage from WMC Mortgage Corp.  On August 1, 2008 the mortgagee declared the mortgage in default.  Lelina declared Chapter 7 bankruptcy on July 15, 2010.   Lenders and/or assignees allegedly involved in the mortgage were MERS Inc., 1st and 2nd Mortgage Company of New Jersey, US Bank NA as Trustee for SABR, American Servicing Company, WMC Mortgage Corp., Countrywide Home Loans, and America's Wholesale Lender, their successors and assigns.  Only Countrywide Home Loans is named as a Defendant to this action and Plaintiff has not provided any further factual allegations regarding Countrywide's participation in her loan.

John and Maria Sayson (the "Saysons") allegedly secured their first mortgage from America's Wholesale Lenders.  The mortgage was alleged to have been assigned to Mortgage Electronic Systems, Inc., and thereafter assigned to Bank of New York as trustee for the certificate holder CWALT, Inc. Alternative Loan Trust 2005-32T1 Mortgage Pass Through Certificates, Series

14

2005-32T1 of Countrywide Home Loans, Inc.  Plaintiff further alleges that all the document communication letters from the lenders came through BAC Home Loans.  Such communications are alleged to involve notice of foreclosure, monthly statements, and workout package from the "Hope." The Saysons allegedly never received notice that their mortgage was sold or transferred to anyone aside from America's Wholesale Lender and Countrywide Home Loans.  The loan allegedly proceeded into default and a foreclosure action was filed on May 27, 2010.  Plaintiff also alleges that "[t]he Second Mortgages for $50,000.00 and $40,000.00 are unknown to me."  While Bank of New York and Countrywide Home Loans are named as Defendants to the instant action, no further factual allegations identify any conduct done by such entities in their transactions with Plaintiffs.

Ali Saleh secured a first mortgage from the Wall Street Financial Corporation.  The loan later proceeded into default.  According to Plaintiff, Wall Street Financial Corporation was paid a grand total of $10,381, which represented a profligate fee and "underscores the Predatory Lending practice and violation of UDAP and perhaps the RICO statutes which characterized this banking transaction." Wall Street Financial Corporation is not a named Defendant to this suit and Plaintiff provides no further facts connecting the conduct of Wall Street Financial Corporation to any named Defendant. Plaintiff alleges that Countrywide Home Loans would also become part of the lending transaction, but fails to provide any facts to indicate what that participation entailed.

Michael Delponte secured a first mortgage from the 1st National Bank of Arizona, the Bank of New York/Mellon Trust Company, NA (fka) The Bank of New York trust Company, NA, and JP Morgan Chase Bank, NA, and their successors and assigns.  No further facts are provided regarding the nature of the participation of each entity allegedly involved in the Delponte mortgage.

After purchasing her subject property on February 7, 2005, Nelia Sunaz obtained a first

mortgage on which the mortgagees are alleged to have been JP Morgan Chase, HomeBuyers Mortgage, and others.   On March 24, 2006, Sunaz placed a first mortgage with Americas Wholesale Lender (Countrywide Mortgage), Village Home Mortgage, and others.   Other lenders allegedly involved during the aforementioned transactions were Bank of America and Homepay Plus, together with their successors and assigns.   Settlement fees in excess of $6,000, including a $4,730 loan broker fee to Village Home Mortgage were paid.   Village Home Mortgage is not a named Defendant to the instant action and no facts are alleged to connect Village Home Mortgage to those who are named.   The precise nature of the involvement of the named entities was not further specified.   The loans subsequently regressed into default.

Geraldez and Mallori are borrowers who allegedly secured several financing arrangements from lenders including Bank of America, their successors and assigns.   The unspecified loans were declared in default by the unspecified mortgagees and foreclosure proceedings commenced.   From Plaintiffs' allegations, it appears as though Bank of America was involved in the first mortgage, while any number of unnamed entities were involved in the provision of a second mortgage. Plaintiffs thereafter fail to attribute any action to Bank of America, leaving it unclear the precise nature of conduct Bank of America is alleged to have committed.

Rosa Magbag allegedly refinanced her home with two mortgages on January 23, 2007.   The mortgages were provided by Lancaster Mortgage Bankers in a long line of lenders and/or assignee-servicers that included MERS, Inc., US Bank, NA, Bank of America, La Salle Bank, Morgan Stanley, GMAC Bank, SLS LLC, and Accurate Mortgage, together with their successors and assigns. The mortgagees would later declare the mortgages in default on June 1, 2009.   Fees were allegedly charged to the borrower, which included a YSP of $838, a loan origination fee of $4,030, and a

commitment fee of $838 to Accurate Mortgage.  Accurate Mortgage is not a name Defendant to this

action, nor is any named entity with the exception of Bank of America.  No further facts are alleged

regarding the precise involvement of Bank of America, or its connection to Accurate Mortgage and

the fees charged.

Eleven of the named Plaintiffs do not provide a single specific fact regarding the

circumstances of their mortgage transactions that would enable this Court to determine whether they

are in fact entitled to some form of relief.[8]  Such Plaintiffs are alleged to "have a similar situation

with the rest of the Plaintiffs given here."

For the following reasons, this Court finds that the aforementioned allegations in connection

with the remaining general statements provided throughout the rest of the Complaint are insufficient

to state a claim upon which relief can be granted.  Defendants Motion to Dismiss is therefore

**granted.**

II.     <u>MOTION TO DISMISS</u>

A.     <u>LEGAL STANDARD</u>

1.     <u>Standard of Review for Motion to Dismiss for Lack of Subject Matter</u>
       <u>Jurisdiction Pursuant to Rule 12(b)(6)</u>

In deciding a motion under Rule 12(b)(6), a district court is "required to accept as true all

factual allegations in the complaint and draw all inferences in the facts alleged in the light most

favorable to the [Plaintiff]."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A]

complaint attacked by a ... motion to dismiss does not need detailed factual allegations."  Bell Atl.

---

[8]The following Plaintiffs fail to provide any facts concerning their respective mortgages:
Leah and Alan Abucay, Haseeb and Cheryl Baksh, Jay and Ronalyn Gemino, Neil Ladera, Jin
Zhou, Cheung Lin, Uprenda and Parul Metha, Nichette Meusa, Victor Napenas, Maximo C. and
Suzette T. Napuli, and Manuelit S. and Flora G. Pablo.

Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted).  "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555.

    "A complaint will survive a motion to dismiss if it contains sufficient factual matter to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the Defendant is liable for misconduct alleged." Id. "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Young v. Speziale, 2009 WL 3806296,  *3 (D.N.J. Nov. 10, 2009) (quoting Iqbal, 129 S.Ct. at 1950). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950.

    2.    FED. R. CIV. P. 9(b)

    Fraud-based claims are subject to FED. R. CIV. P. 9(b).  Dewey v. Volkswagon, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) ("[New Jersey Consumer Fraud Act] claims 'sounding in fraud' are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b).").  Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake." A Plaintiff must state the circumstances of the alleged fraud "with sufficient particularity to place the Defendant on notice of the 'precise misconduct with which [it is] charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citing Lum v. Bank of America, 361 F.3d 217, 223-224 (3d Cir. 2004). To satisfy this standard, the Plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

### B.  DISCUSSION

Plaintiffs' Complaint suffers from many of the same pleading deficiencies that were noted in the Almazan case, as well as the dismissals of several similar complaints to follow. Accordingly, this Complaint must also be dismissed. As previously noted, this Court explained that the complaint in Almazan "[did] not inform any reader what the Defendants did wrong, to whom they did it, or when they did it." Although Plaintiffs may have cured the "who" deficiencies by filing this separate complaint against those Defendants who were allegedly involved in their respective loans, Plaintiffs' Complaint in this action remains deficient regarding the "what" and "when" of Defendants alleged conduct.[9] Such pleading deficiencies fail to properly place Defendants on notice of "any specific acts that it or [its subsidiaries] committed during the course of its mortgage transactions with Plaintiffs." Gutierrez v. TD Bank, No. 11-5533, 2012 U.S. Dist. LEXIS 10724, at *11. (D.N.J. Jan. 27, 2012).

This Court has already found occasion to dismiss three similarly pled complaints filed in the wake of the Almazan dismissal. Of particular note is the case of Gutierrez v. TD Bank, No. 11-5533, 2012 U.S. Dist. LEXIS 10724. (D.N.J. Jan. 27, 2012) in which the Honorable Jose L. Linares provided an in depth discussion regarding the sufficiency of Plaintiffs' complaint. There, on the

_____

[9]This Court notes here that several of Plaintiffs' pleadings do not even appear to remedy the "who" deficiency as they fail to implicate any of the Defendants named to this action.

basis of a similarly pled complaint to that in issue here, Judge Linares found that  "as a general

matter, the paragraphs in the complaint [did] not adequately put Defendant [ ] on notice of any

specific claims linked to specific acts that it or the John Doe Defendants committed during the

course of its mortgage transactions with the Plaintiffs." Gutierrez v. TD Bank, 2012 U.S. Dist.

LEXIS 10724, at * 11.  Rather, the Court found that the specific facts addressing the mortgage

transactions between Defendant and Plaintiffs were "scarce," "while the Complaint extensively states

and restates legally conclusory statements regarding Defendant's wrongful conduct as defined

exclusively within the terms of the relevant statutes or case law authority." Id. at *17.   By way of

example, Judge Linares found that, given the allegations raised by the complaint, Plaintiffs failed

to indicate:

> which exact disclosures required by law were not provided; the nature and extent of any
> credit reporting which occurred by Defendants in violation of federal law; what, if anything,
> was inaccurate about such reporting; the substance of any written notices to Plaintiffs which
> violated their rights under state law; which terms of any contract were breached by
> Defendants; the nature of the emotional distress suffered by Plaintiffs; what, if any, benefit
> Defendants may have obtained due to alleged inaccuracies represented to Plaintiffs as
> amounts owed for any loans; what representations, if any, Plaintiffs made to Defendants
> regarding their financial circumstances and their "ability to repay" justifying their allegations
> regarding Defendants predation, and so on.

Gutierrez, 2012 U.S. Dist. LEXIS 10724, at * 17-18.  Finally, the Court took issue with the fact that

Plaintiffs' opposition failed to cite to any paragraphs in the complaint "wherein facts relevant to their

alleged claims are discernable." Id. at *18.

    This Court followed suit from Gutierrez with the dismissal of the complaints in Aquino v.

Aurora Loan Services, LLC, No. 11-5518, 2012 WL 2514844 (D.N.J. June 28, 2012) and Flores, et

al. v. HSBC, et al, No. 11-5525, 2012 WL 2522987 (D.N.J. June 29, 2012).  In Aquino and Flores,

the Court found that the Plaintiffs were similarly deficient in their pleadings and therefore failed to

20

state a claim upon which relief might be granted.  Plaintiffs now present identical claims to those raised in Gutierrez, Flores, and Aquino, as well as nearly identical factual allegations, with the exception of the inclusion of the specific details of each Plaintiff's mortgage summarized above. Consequently, Plaintiffs' Complaint suffers from the same factual deficiencies highlighted in the preceding caselaw and must therefore be dismissed.[10]

The Third Circuit has held that "[a]lthough a Plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently 'permit the court to infer more than the mere possibility of misconduct.'" Guirguis v. Movers Specialty Servs., 346 Fed. App'x. 774, 777 (3d Cir. 2009), citing Iqbal, 129 S.Ct. at 1950.  Here, Plaintiffs' Complaint is almost entirely a recitation of legal conclusions closely mirroring the language of the statutes Defendants are claimed to have violated.  Indeed,  the Complaint does more to inform this Court of the state of the law than it does to inform the Court of the facts upon which Plaintiffs' claims are based.  Such pleading leaves this Court unable to discern the appropriate causes of action for which Defendants might plausibly be held accountable.   Moreover, the Court is left with the impression that either Plaintiffs are unable to identify the true nature of the causes of action they allege, or that Plaintiffs allege that Defendants have violated each statute in virtually every way conceivable.

---

[10]The Court also notes that claims common to both the Gutierrez and the instant action were dismissed in Gutierrez as not cognizable as a matter of law. 2012 U.S. Dist. LEXIS 10724, at *35.  Such claims include (1) furnishing inaccurate information to credit agencies (Count 5); (2) failure to correct inaccurate reporting (Count 6); (3) failure to provide required notices and disclaimers (Count 7); (4) predatory and negligent lending (Counts 10 and 28); (5) New Jersey Licensed Lenders Act (Count 11); and (6) unfair business practices (count 16).  The Court in Gutierrez found that the aforementioned counts should be dismissed on the grounds that they were redundant or failed to cite to any law or statute supporting a claim independent of the claims already raised.   The Court therefore dismissed the aforementioned claims without prejudice "to Plaintiffs' amendment of any claims asserted therein which do not duplicate other claims already stated in Plaintiff's complaint."  Id. at *40.  This Court echoes the conclusions drawn in Gutierrez in further support of the dismissal of the aforementioned claims.

Plaintiffs must provide some grounds upon which this Court may assess the sufficiency of each of the claims asserted, yet they have failed do more than vaguely allege that Defendant was a participant in some of the Plaintiffs' mortgage transactions.

Accordingly, this Court finds that the entirety of Plaintiffs' Complaint fails to plead with the requisite particularity to satisfy even the liberal pleading standards of Rule 8(a), let alone the heightened pleading standard for Plaintiffs' fraud-based allegations under Rule 9(b).[11]  Plaintiffs' Complaint must therefore be dismissed.[12]

———————————————

[11]With respect to the <u>Gutierrez</u> Plaintiff's fraud-based claims, Judge Linares addressed the argument, similarly raised here, that the requirements of Rule 9(b) should be relaxed for circumstances where factual information is exclusively within the opposing party's knowledge or control.  The Court found the rule cited by Plaintiffs to be inapplicable under the circumstances, and this Court agrees.  As noted by Judge Linares,

> Plaintiffs need only state with particularity the who, what, when and where of the false misrepresentations or omissions made by Defendants <u>based on their familiarity with said misrepresentations as experienced by them in the mortgage transactions</u> . . .

<u>Id.</u> at 25-26 (emphasis added).  There, as here, "those facts are both within the Plaintiffs' control and need not be enumerated in every detail or with respect to each and every instance to meet the heightened pleading standard for fraud-based claims."  <u>Id.</u>  Just as the <u>Gutierrez</u> Plaintiff was not relieved of its obligation to plead claims of fraud with specificity under Rule 9(b), Plaintiffs here will not be so relieved.

[12]As this Court finds that the motion to dismiss should be granted for the reasons herein expressed, the Court declines to address the statute of limitations argument raised by Defendant and addressed by Judge Linares in the <u>Gutierrez</u> opinion. Similarly, this Court declines to address the arguments raised by Defendants concerning abstention.

**III.** <u>CONCLUSION</u>

Accordingly, as this Court finds that Plaintiffs have failed to state a claim upon which

relief can be granted,  Defendant's motion to dismiss is **granted without prejudice**.

                                                S/ Dennis; M. Cavanaugh_____
                                             DENNIS M. CAVANAUGH, U.S.D.J.

Date:               July \_30\_\_\_, 2012
cc:                 All Counsel of Record
                     Hon. J. A. Dickson, U.S.M.J.
                     File